```
                                              FILED
     UNITED STATES DISTRICT COURT         04 FEB 27 PM 2:56
     NORTHERN DISTRICT OF ALABAMA
        NORTHWESTERN DIVISION             U.S. DISTRICT COURT
                                           N.D. OF ALABAMA
```

| | |
|---|---|
| PAUL FULLER, | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action No. CV-02-S-2485-NW |
| COLBERT COUNTY ANIMAL CONTROL ASSOCIATION, *et al.*, | ) ENTERED |
| Defendants. | ) |

## MEMORANDUM OPINION

This action is before the court on the following motions: (1) defendants' motion for summary judgment;[1] (2) defendants' motion to strike plaintiff's response to the motion for summary judgment;[2] and (3) plaintiff's motion for leave to file his witness and exhibit list out of time.[3]

### I. FACTUAL BACKGROUND

The Colbert County Animal Control Association ("CCACA") is a nonprofit corporation which was created in 1993 for the following purposes: (1) to "[c]ontract with the municipalities in Colbert County, Alabama and Colbert County for the control of animals in Colbert County, Alabama and in the municipalities thereof"; (2)

---

[1]Doc. no. 15.
[2]Doc. no. 22.
[3]Doc. no. 24.



to "[o]wn or lease an animal pound"; (3) to "[o]perate or cause such pound to be operated"; and (4) to "[d]o all things necessary to carry out the foregoing."[4]

CCACA is governed by a four-member Board of Directors ("Board") consisting of the mayor of the City of Muscle Shoals, the mayor of the City of Sheffield, the mayor of the City of Tuscumbia, and one member of the Colbert County Commission.[5] CCACA receives funding from the following sources: a fee imposed on the utility bills of the residents of Muscle Shoals, Sheffield, and Tuscumbia; a flat fee paid by Colbert County; and occasional donations and grants.[6] The day-to-day operations of the animal shelter are managed by a Director, who is hired by the Board, and who, in turn, has authority to hire and supervise the shelter's employees.[7] CCACA does not have a written employment policy, handbook, or manual.[8]

Plaintiff was hired by CCACA as an animal control officer in January of 2000.[9]

---

[4]Doc. no. 19 (defendants' evidentiary submission), Exhibit A to Exhibit 1 (Articles of Incorporation of Colbert County Animal Control Association), at 1.

[5]*Id.* at 2. Muscle Shoals, Sheffield, and Tuscumbia are all cities located within Colbert County, Alabama. The composition of the Board changes whenever new people are elected to the mayoral and commission offices.

[6]Doc. no. 16 (Deposition of Ian Sanford), at 18.

[7]Doc. no. 19 (defendants' evidentiary submission), Exhibit B to Exhibit 1 (CCACA By-Laws), at ¶ 7.

[8]Defendants' evidentiary submission, Exhibit 1 (Affidavit of David H. Bradford), at 2. The By-Laws of CCACA state that the internal operations of the animal shelter will be governed by an Operating Manual. CCACA By-Laws, at ¶ 8. However, no such manual was in place at any time relevant to plaintiff's claim. *See* Bradford Affidavit, at 2; doc. no. 20 (defendants' brief in support of summary judgment), at 3.

[9]*See* doc. no. 1 (complaint), at ¶¶ 6-7; doc. no. 17 (Deposition of Paul Fuller, Jr.), at 15.

Prior to being employed by CCACA, plaintiff was a correction officer for the Police Department of the City of Corinth, Mississippi, for approximately a year and a half.[10] While plaintiff was employed in Corinth, accusations of misconduct were made against him. He was given the choice of resigning or being terminated, and he chose to resign.[11] After he resigned from his job in Corinth, plaintiff sought out employment in the Florence, Alabama, area, because he had lived in Florence most of his life, and he still had family members in the area.[12]

When plaintiff learned of the job opening at CCACA in January of 2000, he traveled to the animal shelter to fill out a job application and to interview with Jamiel Cantrell, who was Director of the shelter at the time.[13] Plaintiff's interview with Cantrell lasted approximately an hour and a half.[14] During that time, the two discussed plaintiff's job duties, his relocation to the Florence area, his wages and insurance benefits, the work truck he would be driving, his on-call duties, and the coverage area for which he would be responsible.[15] Also during the interview, Cantrell carried on a phone conversation with Mayor McCormick of the City of

---

[10]Fuller Deposition, at 14-15.
[11]*Id.* at 75-77.
[12]*Id.* at 9-10, 15-18.
[13]*Id.*
[14]*Id.* at 23.
[15]*Id.* at 22-23.

Tuscumbia. Mayor McCormick directed Cantrell to ask plaintiff questions about his job qualifications and training.[16] Cantrell discussed plaintiff's qualifications with the Board, and plaintiff was hired the same day he was interviewed.[17]

Plaintiff asked Cantrell about the stability of his job at the interview. Cantrell responded that CCACA would "have to pull up" from a recent vehicle accident involving the death of the previous animal control officer and the loss of one of the shelter's trucks.[18] Other than tax forms, plaintiff did not receive any documents related to his job at the time he was hired.[19] After he was hired, plaintiff never discussed the terms of his employment, other than his everyday job duties, with Cantrell,[20] or with Elaine Bray, Cantrell's successor.[21] Plaintiff asked the Board members for a raise after the 2000 mayoral elections.[22] Other than the discussions about his raise, plaintiff never discussed the terms of his employment with any member of the Board.[23]

---

[16] *Id.* at 24.

[17] *Id.* at 25-26, 28.

[18] *Id.* at 25.

[19] *Id.* at 26, 33. A written description for plaintiff's job did exist. Plaintiff saw the description, but he does not have his own copy of it. *Id.* at 29-30. There is not a copy of the job description in the record.

[20] *Id.* at 33.

[21] *Id.* at 42-44.

[22] *Id.* at 36-41.

[23] *Id.* at 36-46.

Plaintiff's employment with CCACA was terminated in March of 2002.[24] Plaintiff did not receive oral or written notice of any charges against him prior to his termination, and he was not afforded the opportunity for a pre-termination hearing.[25] Despite his requests, plaintiff did not receive an explanation of the reasons for his termination.[26]

Plaintiff filed suit on October 9, 2002, invoking this court's jurisdiction pursuant to 28 U.S.C. § 1343(3), 42 U.S.C. §§ 1983 & 1985, and 28 U.S.C. § 1331(3). He named as defendants CCACA and David H. Bradford, Wade Gann, Ian Sanford, and Emmit Jamar, the members of the Board at the time the suit was filed.[27] Plaintiff sued all individual defendants in both their respective individual capacities, and in their capacities as Board members.[28] Plaintiff's sole claim is one for violation of his procedural due process rights against all defendants.[29] He asserts that his rights were violated because he was terminated without cause, and because he was not afforded a pre-termination or post-termination hearing.[30]

---

[24] *Id.* at 84; complaint, at 3.
[25] Fuller deposition, at 85.
[26] *Id.* at 86.
[27] Complaint, at 1.
[28] *Id.*
[29] *Id.* at 2-3.
[30] *Id.* at 3.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but also that it "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc). The

motion pierces the pleadings, and "strikes at the heart of the claim. In effect it argues that as a matter of law upon admitted or established facts the moving party is entitled to prevail." Charles Alan Wright, *The Law of Federal Courts* § 99, at 705 (5th ed. 1994).

### III. DISCUSSION

Defendants argue that summary judgment should be granted on plaintiff's procedural due process claim, because plaintiff did not possess a constitutionally protected property right in his continued employment with CCACA. The court agrees.

"The success of due process arguments depends upon the finding of a constitutionally protected property interest in the expectation of continued employment or of a liberty interest having been infringed upon by the State; absent such interest, no due process protections attach." *Gray v. Board of Regents of the University System of Georgia,* 150 F.3d 1347, 1350 (11th Cir. 1998) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-70, 92 S. Ct. 2701, 2705, 33 L. Ed. 2d 548 (1972)); *see also Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1486 (11th Cir. 1992) ("When reviewing a due-process claim, the threshold question is whether plaintiffs were deprived of a protected property or liberty interest.").

It is well-settled that "[t]o have a property interest in a benefit, a person clearly

must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth,* 408 U.S. at 577, 92 S. Ct. at 2709. Further, "[p]roperty interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

A.   **Alabama Code § 11-43-160**

Plaintiff contends that his "legitimate claim of entitlement" to continued employment with CCACA derives from a provision in the Alabama Code which provides:

> Any person appointed to office in any city or town may, *for cause, after a hearing,* be removed by the officer making the appointment.
>
> The city council may remove, by a two-thirds vote of all those elected to the council, any such person in the several departments for incompetency, malfeasance, misfeasance or nonfeasance in office and for conduct detrimental to good order or discipline, including habitual neglect of duty.

Ala. Code § 11-43-160 (1975) (emphasis supplied). Plaintiff correctly points out that § 11-43-160 has been construed to require municipalities to provide notice and a hearing to its officials before terminating them. *See, e.g., Demastus v. City of Phil Campbell,* 519 So. 2d 1359, 1361 (Ala. 1987); *Persons v. Summers,* 151 So. 2d 210,

213 (Ala. 1963); *Reeves v. Thompson,* 100 So. 756, 757 (Ala. 1924). Some of the Alabama cases interpreting § 11-43-160 discuss a municipality's failure to comply with the statute as a violation of *state law. See Persons,* 151 So. 2d at 213; *Reeves,* 100 So. at 757. Nonetheless, the statute could also reasonably be applied to create a constitutionally protected property interest. *See Roth,* 408 U.S. at 577, 92 S. Ct. at 2709 (property interests can be created by "an independent source such as state law"); *Demastus,* 519 So. 2d at 1360 (plaintiff "alleged that he was terminated from his position without due process of law").

Even so, the court concludes that § 11-43-160 does not apply to plaintiff as an employee of CCACA. The statute, by its terms, covers those persons "appointed to office in any city or town." Ala. Code § 11-43-160 (1975). CCACA is not a city or a town; it is a non-profit corporation. Plaintiff has cited no case, and this court has found none, to support the proposition that the statute's coverage extends to an employee of a non-profit corporation. Rather, the cases all apply the statute to persons employed directly by a municipality. *See, e.g., Demastus,* 519 So. 2d at 1361 (statute applied to town's chief of police); *Persons,* 151 So. 2d at 213 (statute applied to town recorder); *Reeves,* 100 So. at 757 (statute applied to an elected town marshal).

Plaintiff argues that he *is* a municipal employee, because he provides services for CCACA in the cities of Muscle Shoals, Sheffield, and Tuscumbia. To support his

argument, he offers copies of ordinances from the cities of Muscle Shoals, Sheffield, and Tuscumbia, authorizing the appointment of an animal control officer, as well as resolutions from the cities of Muscle Shoals and Sheffield, appointing him as an animal control officer.[31]

The ordinances plaintiff offered do not support his claim. Those ordinances merely state that the position of animal control officer and/or director is *created*; they do not define the parameters of the position, and they do not specifically mention plaintiff in any way.[32]

The Muscle Shoals and Sheffield resolutions, on the other hand, offer more insight into whether plaintiff can be considered an officer of a city or town under the Alabama statute. Those two resolutions contain identical language, and state that plaintiff and two others are appointed "as trained agents of the City to assist in the inspection of alleged violations of cruelty to animals under the provisions of the code

---

[31]Doc. no. 21 (plaintiff's response to summary judgment), at Exhibits A-D. Defendants argue that plaintiff's response to the motion for summary judgment, and particularly Exhibits A-D appended thereto, should be stricken from the record, because the exhibits are not properly authenticated, because they do not meet the requirements of Federal Rule of Civil Procedure 56(e), and because they are irrelevant. Doc. no. 22 (defendants' motion to strike plaintiff's response to summary judgment). However, as discussed *infra,* the court concludes that, even if plaintiff's exhibits are properly considered, they do not support the claim that plaintiff possessed a constitutionally protected property interest in continued employment at CCACA. Thus, the motion to strike will be denied as moot.

[32]Plaintiff's response to summary judgment, at Exhibit A (Muscle Shoals Ordinance No. 1154-95) and Exhibit D (Sheffield Ordinance dated February 3, 1987 and Tuscumbia Ordinance No. A-112a).

of Alabama and enforcement of the City's animal control ordinances," *but only "for so along* [sic] *as [they] remain employed by the Colbert County Animal Control Association."*[33] The resolutions also explicitly state that the persons named therein "shall not be employees of the City, nor construed as such, and shall receive no compensation nor benefits from the City."[34]

Thus, it is clear that plaintiff was an *agent* of each of the cities, and that he was allowed to perform services within the city limits. However, plaintiff was not an "officer" of any city, and he is not within the coverage of Alabama Code § 11-43-160. Plaintiff never was employed by any municipality, and he never was entitled to receive any compensation or benefits from a municipality. Further, even if plaintiff could be considered an employee of Muscle Shoals, Sheffield, or Tuscumbia, he would not have a constitutionally protected property right in his continued employment by those cities. His position as an animal control officer in the cities was explicitly conditioned on his continued employment at CCACA. Thus, based on the language of the resolutions, plaintiff reasonably could expect that his employment with CCACA might be terminated at some point. In summary, plaintiff may have had a desire for, or a unilateral expectation of, continued employment at CCACA, but he

---

[33] *Id.* at Exhibit B (Muscle Shoals Resolution No. 1806-01, dated October 15, 2001); Exhibit C (Sheffield Resolution dated January 7, 2002) (emphasis supplied).
[34] *Id.*

did not possess a "legitimate claim of entitlement" to it. *See Roth*, 408 U.S. at 577, 92 S. Ct. at 2709.

**B.    Contract Law**

Plaintiff also cannot rely on a contract theory to support his "legitimate claim of entitlement" to continued employment at CCACA. Under Alabama law, employment "at will" is the general rule. Thus, employees generally may be discharged without any sort of notice or a hearing, unless "the employer's discretion to discharge the employee is somehow fettered." *Green v. City of Hamilton, Housing Authority*, 937 F.2d 1561, 1564 (11th Cir. 1991) (citing *Davis v. Mobile Consortium of CETA*, 857 F.2d 737, 741 (11th Cir. 1988); *Thompson v. Bass*, 616 F.2d 1259, 1265 (5th Cir. 1980)). If plaintiff can prove that his employment was "permanent," and thus "terminable only for cause," then he can establish that a constitutionally protected property interest in his continued employment existed. *Green*, 937 F.2d at 1564.

> An employment relationship is "permanent," and thus not terminable "at will," if: (1) there was a clear and unequivocal offer of "permanent" employment, (2) the employee provided some substantial consideration for the contract apart from the services to be rendered, and (3) the individual making the offer had authority to bind the employer. *Hoffman-LaRoche [v. Campbell]*, 512 So. 2d [725,] 728 [(Ala. 1987)]. And, because a contract for "permanent" employment is capable of being performed in less than a year (so the statute of frauds does not apply), such a contract may be oral. *Kistos v. Mobile Gas Serv. Corp.*, 404 So. 2d 40, 41-42 (Ala. 1981).

*Green*, 937 F.2d at 1564.

The record does not reflect whether Cantrell had the authority to bind CCACA when he offered plaintiff his job. However, plaintiff cannot prove that he ever was presented with a "clear and unequivocal offer of 'permanent employment,'" or that he "provided ... substantial consideration for [his] contract apart from the services he rendered." *See id.* at 1564. Because CCACA does not have a written employment policy, handbook, or manual, there is nothing in writing to indicate that plaintiff's employment was intended to be "permanent." *See id.* at 1565 ("[T]he factfinder may also consider the handbook in determining whether a clear and unequivocal offer of permanent employment was made."). Although a written description for plaintiff's job existed, plaintiff has not produced a copy of that description, or even asserted that the description guaranteed him any sort of continued employment.

Further, plaintiff cannot prove that any CCACA official ever made him an *oral* offer for a permanent employment contract. *See id.* at 1564 (holding that comments by the defendant's Executive Director that plaintiff's employment would be "permanent" and that he would be terminated only if something "horribly bad" happened after six months of probation could constitute an offer of "permanent" employment). Plaintiff discussed various aspects of his job with Cantrell during his job interview, but nothing in the record indicates that Cantrell offered plaintiff a "permanent" job. If anything, Cantrell's comment that CCACA would "have to pull

-13-

up" from the recent accident suggests that CCACA could be encountering financial difficulties, and that plaintiff's job might be affected by those difficulties. After he was hired, plaintiff did not discuss the terms of his employment with Cantrell, or with Bray, his other supervisor. He also did not discuss the terms of his employment with any member of the Board.

Plaintiff also cannot prove that he "provided ... substantial consideration for [his] contract apart from the services he rendered." *See id.* at 1564. In *Green*, the court held that the plaintiff provided sufficient consideration for taking his job, because

> he had to make financial sacrifices. He had to move his household from another state, and his wife had to give up her old job and take a less desirable job. And [plaintiff] says he told the Executive Director about these sacrifices in a pre-employment interview. ... These sacrifices must be deemed more than nominal ... .

*Id.* at 1565.

Like *Green*, plaintiff did move from a different state to take his job with CCACA. However, plaintiff did not give up his job in Mississippi to take the CCACA job. Rather, at the time he took the CCACA job, plaintiff was unemployed, and he was trying to relocate to the Florence area to be near his family. Plaintiff did not make any sacrifices to work for CCACA. Rather, he moved from a less desirable living location to a more desirable one, and from being unemployed to having a job.

If anything, plaintiff's situation *improved* when he took the job with CCACA. Thus, plaintiff did not provide substantial consideration for his job with CCACA, and his employment with CCACA cannot be considered "permanent."

In summary, plaintiff does not have a "legitimate claim of entitlement" to his job under Alabama Code § 11-43-160. He also did not have an oral or written contract for "permanent" employment with CCACA. Indeed, plaintiff has produced *no* evidence that he possessed a constitutionally protected property right in continued employment by CCACA. Thus, his procedural due process claim fails as a matter of law. *See Estes v. Tuscaloosa County,* 696 F.2d 898, 902 (11th Cir. 1983) (citing *Roth,* 408 U.S. 564, 92 S. Ct. 2701) ("There is no indication of any statute, rule, or understanding upon which plaintiff could rely for a legitimate claim of entitlement [to a benefit]. Without such an entitlement, there is no constitutionally protected property interest to serve as the basis of a due process claim."); *Cook v. Ashmore,* 579 F. Supp. 78, 84 (N.D. Ga. 1984) (plaintiff did not possess a constitutionally protected property interest in continued employment or a pay raise because he could point to "no statute, rule, regulation, policy or contractual term that reasonably could be read as providing him with an entitlement to these benefits.").

## IV. CONCLUSION

Based on the foregoing, defendants' motion for summary judgment will be

denied. Defendants' motion to strike plaintiff's response to the summary judgment motion will be denied as moot. Plaintiff's motion to file his witness and exhibit lists out of time also will be denied as moot.

DONE this 27th day of February, 2004.

_____
United States District Judge